## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION No. H-14-13 |
| | § | |
| BRANDON JAMAL GARNER | § | |

### MEMORANDUM OPINION AND ORDER

Defendant Brandon Jamal Garner, represented by counsel, filed a motion for a reduction in sentence ("RIS") to time served under the compassionate release provisions of 18 U.S.C. § 3582(C)(1)(A).  (Docket Entry No. 106.)  The Government filed a response opposing the motion (Docket Entry No. 108), to which Defendant filed a reply (Docket Entry No. 109).  Defendant has also filed a motion requesting an oral hearing.  (Docket Entry No. 110.)

Having considered the motions, the response and reply, the record, and the applicable law, the Court DENIES the motions for the reasons explained below.

### *Background*

Defendant is a 34-year old male currently confined at MCFP Springfield, a Federal Bureau of Prisons ("BOP") medical facility in Springfield, Missouri.  During March through November 2012, Defendant committed seven armed robberies of Dollar General Stores in the Houston area.  He was indicted on a six-count superceding indictment on September 18, 2014, for three counts of interference with commerce by robbery, pursuant to 18 U.S.C. §

1951(a), and three counts of brandishing a firearm during and in relation to a violent felony, pursuant to 18 U.S.C. § 924(c).

Defendant pleaded guilty on February 19, 2015, to Count 1S for interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a); to Count 2S for use of a firearm during the commission of a violent crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and to Count 4S for use of a firearm during the commission of a violent crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (c)(1)(C)(i).  The remaining three counts of the indictment were dismissed.  On October 16, 2015, the Court sentenced Defendant to 46 months imprisonment on Count 1S, to be followed by mandatory consecutive terms of 84 and 300 months for Counts 2S and 4S, respectively, for a total of 430 months. The Court further imposed concurrent terms of three and five years' supervised release.  The BOP currently reports his anticipated release date as June 18, 2044.

The parties agree that in May 2018, while serving his sentence at FCI Three Rivers, Texas, Defendant was injured while playing basketball during recreation time.  He sustained a C5-6 vertebral subluxation with spinal cord injury, leaving him a partial quadriplegic with a neurogenic bladder.  He was subsequently transferred to MCFP Springfield for 24-hour nursing care.  According to his motion, he is confined in bed or a wheelchair in excess of 50% of his waking time, with limited ability to use his hands or legs, and requires round-the-clock medical care as a permanent resident of the in-patient medical unit.  (Docket Entry No. 106, p. 1.)

2

His medical records following the accident and ensuing surgery establish that he is able to feed himself and breathes room air on his own.  He showed improvement in his upper extremities while in rehabilitation, but has no control over his lower extremities and is incontinent.  Although Defendant, while proceeding *pro se*, provided copies of his medical records covering his treatment and care from the date of the accident through October 3, 2018,[1] he provides no medical records after that date.  Consequently, the Court has no objective information as to Defendant's current medical prognosis, care, and conditions.

Defendant claims that he is at high risk of serious illness should he contract COVID-19 while incarcerated and is unable to care for himself.  Defendant has served approximately 77 months of his 430-month sentence, or less than 20% of the sentence imposed by this Court.  He requests that the Court grant his motion, reduce his sentence to time served, and release him to his family's care.

### Legal Standard

Defendant brings his motion for a sentence reduction and/or compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court in its discretion to modify a sentence under certain circumstances.  Under the current version of the statute, a motion for modification may be made by either the Director of the BOP or by a defendant after the defendant has fully exhausted his administrative rights.  18 U.S.C. § 3582(c)(1)(A).

---

[1]*See* Docket Entry No. 98, Exhibits.

3

Compassionate release under section 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds that two conditions have been satisfied. The first is that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The second is that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court also must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id. See also United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). The district court must base its decision on "a thorough factual record" and "must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision." *Id*.

The Sentencing Commission has addressed in a policy statement what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. *See* U.S.S.G. § 1B1.13. This Court will refer to the Sentencing Commission's policy statement for guidance, without deciding whether it is binding in this context. The relevant policy statement outlines four categories of circumstances that may constitute 'extraordinary and compelling reasons' for a sentence reduction:

(1)   the defendant suffers from a medical condition that is terminal or substantially diminishes the defendant's ability to provide self-care in a correctional environment;

(2)   the defendant is at least 65 years old, is experiencing a serious deterioration in health due to the aging process, and has served at least 10 years or 75% of his or her term of imprisonment;

4

(3)     family circumstances involving the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner; or

(4)     other reasons, other than or in combination with the other listed circumstances, that are extraordinary and compelling.

U.S.S.G. § 1B1.13, Application Note 1.  Defendant in this instance relies on subparagraph

(1).  As observed by the Government, the Sentencing Commission policy statement

> allows a reduction for 'extraordinary and compelling reasons' only if the reasons are 'consistent with this policy statement.' USSG §§ 1B1.13(1)(a) & (3).  Application note 1 to the policy statement then explains that 'extraordinary and compelling reasons exist under any of the circumstances set forth below,' which include only (a) a defendant suffering from a terminal illness or other medical condition 'that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover . . . . '

(Docket Entry No. 108, p. 7.)  A defendant in a motion brought under section 3582(c)(1)(A) has the burden to establish that relief is warranted in his case.

Even if extraordinary and compelling reasons for modification or early release are shown, Sentencing Guideline § 1B1.13(2) authorizes a sentence reduction only if the defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)."

As provided in both section 3582(c)(1)(A) and the policy statement, a court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable.  These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of

5

the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner.  18 U.S.C. § 3553(a).  The policy statement also recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . . after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]"  U.S.S.G. § 1B1.13 cmt. 4.

Thus, a defendant may be eligible for compassionate release under section 3582(c)(1)(A) if the Court finds "extraordinary or compelling reasons" to warrant a sentence reduction and Defendant is found not to pose a risk of danger to the community, and it also finds that a sentence reduction is consistent with United States Sentence Commission policy statements.

### *Analysis*

#### *Exhaustion*

Defendant submitted a request for a RIS based on his "debilitated medical condition" in 2019, which was denied in January 2020.  In declining his request, the BOP noted that Defendant

> has a lifelong criminal history, including a variety of drug-related offenses and armed robberies, has refused suggested programming while incarcerated, and committed multiple disciplinary infractions, including possession of a dangerous weapon.  Accordingly, although he otherwise meets the criteria for a RIS under section 3(b), his release at this time would minimize the severity of his offenses.  Therefore, his RIS request is denied.

6

(Docket Entry No. 106, Exhibit 6.)  Defendant acknowledges that his RIS request was made and processed prior to the COVID-19 pandemic, but contends he has exhausted his administrative remedies for a compassionate release under the statute.

The Government agrees that Defendant exhausted his administrative remedies as to a RIS based on his "debilitated medical condition," but argues that he did not exhaust as to compassionate release based on his medical vulnerability for COVID-19.  It is the Government's position that Defendant's expansion of his RIS request to include a COVID-19-based issue required him to exhaust anew his request for a RIS and/or compassionate release.

This question of "issue exhaustion" has not been addressed by the Fifth Circuit Court of Appeals, and it may well be applicable in certain situations.  However, the Court is not persuaded that it applies in this case, primarily for the reasoning offered by the Government elsewhere in its response:  COVID-19 does not constitute an independent basis for a RIS and/or compassionate release.  Defendant has not changed the underlying basis of his request for a RIS or compassionate release by this motion; to the contrary, he argues that COVID-19 renders him even more medically vulnerable than before.  In short, Defendant argues that the COVID-19 pandemic increases his already-existing medical vulnerability, which he has already exhausted.[2]

---

[2]*See United States v. Dillard*, No. 1:15-CR-00170-SAB, 2020 WL 2564638, at *2 (D. Idaho Mar. 27, 2020) ("The statute does not require issue exhaustion as argued by the United States[.]"); *Miller v. United States*, No. 16-20222-1, 2020 WL 1812084, at *2 (E.D. Mich. Apr. 9, 2020) (holding that exhaustion was satisfied where the "COVID-19 pandemic merely accentuate[d]

The Court finds that Defendant has exhausted his administrative remedies and may pursue his motion for a RIS and/or compassionate release in this proceeding.

*Extraordinary and Compelling Reasons*

The Government does not dispute that, as the result of his 2018 basketball accident, Defendant requires significant medical intervention and total assistance with activities and instrumental activities of daily living,[3] and that he currently spends more than 50% of his awake time either in bed or in an electric wheelchair.  (Docket Entry No. 108, p. 3.)  Nor can it be seriously disputed that spinal cord injuries can leave some individuals medically vulnerable to serious respiratory infections.[4]  That COVID-19 presents an especially serious risk of respiratory complication or failure for some medically vulnerable individuals is beyond dispute.

The Court finds that Defendant's medical condition meets the threshold requirements of "extraordinary and compelling reasons" under section 3582(C)(1)(A), in that his ability

---

[defendant's] meritorious claims for release"); *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (holding that exhaustion was satisfied because COVID-19 "illustrate[d] the increasing danger presented by the defendant's previously cited health conditions").

[3]It bears repeating that Defendant's medical records indicate that he is able to feed himself and drink on his own.  Thus, the Court disagrees with Defendant's allegations that he requires "total assistance with all Activities of Daily Living" and "is unable to use his arms or legs in any meaningful capacity, rendering him entirely reliant on prison medical staff." (Docket Entry No. 106, pp. 4–5.)  These inaccuracies, however, do not detract from Defendant's overall medical condition for purposes of this motion.

[4] Defendant's medical records show that he sustained an initial acute respiratory failure after the accident.  (Docket Entry No. 98-2, p. 164.)  He recovered with treatment and the records before this Court reflect no further respiratory incidents and no respiratory infections.

to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished within the environment of a correctional facility by the chronic conditions themselves, from which he is not expected to recover.  U.S.S.G. § 1B1.13(1)(A) & cmt. 1. The Court further finds that, given his present medical condition, Defendant would present no danger to the community if he were granted a RIS and/or compassionate release.

*COVID-19 at MCFP Springfield*

Defendant shows that MCFP Springfield currently reports one known case of COVID-19 in its inmate population and no COVID-19 related deaths, which remains true as of June 29, 2020.  *See* https://www.bop.gov/coronavirus/ (last visited June 29, 2020).   The Government presents a detailed synopsis of the lengthy counter-measures and plans promulgated, implemented, and continuously updated by the BOP to promote prisoner health and safety during the COVID-19 pandemic.  As there is currently only one known case of COVID-19 among the prisoners at MCFP Springfield, Defendant has not shown that the BOP and prison officials are unable to maintain his safety or meet his current medical needs.

The Court gives particular consideration to MCFP Springfield's status as a dedicated BOP medical unit with 24-hour medical and nursing care.  Defendant's own statements as to his current medical conditions clearly show that he requires the type of constant care provided at MCFP Springfield.  Defendant states that, due to his medical needs, he has been permanently assigned to the facility.

Defendant asserts that, if released for time served, he would live with his mother and that she, along with his wife and other family members, would provide the round-the-clock care he requires.  However, Defendant does not show that relying on family to care for him 24 hours a day would provide a higher, or even equivalent, level or quality of continuous care than the trained, professional medical staff at MCFP Springfield would provide.

*Sentencing Considerations*

The parties disagree as to whether reducing Defendant's sentence to time served would "promote respect for the law, provide just punishment, [and] afford adequate deterrence" under section 3553(a).

Defendant claims that serving 77 months of his 430-month sentence has been a sufficient punishment and deterrent, especially given his current low quality of life, and that reducing his sentence to time served would satisfy the goals of section 3553(a).  He argues that he "has never been convicted of physically harming any person," and that he completed twenty-five inmate educational classes prior to his accident.  (Docket Entry No. 106, p. 5.) He acknowledges receiving two prison disciplinary infractions prior to his accident, one of which was for possession of gambling paraphernalia, but implies that they were not serious in nature.  *Id*.  Defendant complains that his 430-month sentence "is more than twice the median length of imprisonment for murder reported by the Sentencing Commission."  *Id*., n. 5.  The Government counters that Defendant's seven violent crimes, six counts of armed robbery, and two prison disciplinary infractions speak to the contrary.

10

Defendant's efforts throughout his motion to minimize the significance of his actions or inflate his sentence "relative" to other crimes make clear that reducing his 430-month sentence to time served would not "promote respect for the law, provide just punishment, [and] afford adequate deterrence" under section 3553(a). Defendant's history of seven violent crimes cannot be attenuated by an argument that he never actually harmed anyone. Moreover, his comparison of his 430-month sentence for three counts of armed robbery to a hypothetical sentence for one count of murder is incongruous, if not disingenuous. Nor can the continuing lack of respect for rules and authority evinced by his prison disciplinary infractions be swept under the rug as only minor incidents. Defendant's pre-accident completion of prison education classes is beneficial in many respects, but does not justify leaving unserved 80% of the sentence imposed by this Court. In short, Defendant fails to meet his burden of proof to show that a RIS and/or compassionate release in his case would comply with the goals of section 3553(a).

Defendant also argues that, if imposed today, his sentence would be significantly lower due to intervening changes in the law. The Court is not convinced that this would be the case. As noted by the Fifth Circuit Court of Appeals in *United States v. Gomez*, No. 18-11578 (5th Cir. May 19, 2020), the amended statute itself plainly states that it is not retroactive. It would apply to an offense committed before its December 21, 2018, effective date only "if a sentence for the offense ha[d] not been imposed as of such date." The Government posits that any potential benefit to Defendant would be offset by the

Government's insistence that Defendant plead to more than three counts to ensure a sentence that reflects the seriousness of the criminal conduct. Given the severity and extent of Defendant's violent criminal offenses, the Court is unwilling to speculate what impact the amendment might have if sentence were imposed today.

The Court concludes that, in light of the circumstances set forth above, a sentence reduction to time served would not adequately reflect the seriousness of Defendant's criminal offense, promote respect for the law, or provide just punishment. 18 U.S.C. § 3553(a)(2)(A).

### *Conclusion*

For the reasons set forth above, Defendant's motions for a sentence reduction and/or compassionate release under 18 U.S.C. § 3582(C)(1)(A) (Docket Entry No. 106) is DENIED. Defendant's motion for an oral hearing (Docket Entry No. 110) is DISMISSED AS MOOT.

Signed at Houston, Texas, on July 3, 2020.

Gray H. Miller
Senior United States District Judge